# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00439-COA

**DAVID CARTER**                                                                               **APPELLANT**

**v.**

**MARY A. CARTER**                                                                               **APPELLEE**

DATE OF JUDGMENT:           04/20/2020
TRIAL JUDGE:                HON. WILLIE JAMES PERKINS SR.
COURT FROM WHICH APPEALED:  COAHOMA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:     DAVID CARTER (PRO SE)
ATTORNEY FOR APPELLEE:      AZKI SHAH
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
DISPOSITION:                AFFIRMED - 02/02/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A father appeals a child-custody modification that reduced his visitation allowance from four weekends per month to two. He now claims his modification hearing was prejudiced because the chancery court allegedly disallowed certain interrogatories from introduction into evidence and excluded both his motion to dismiss and corresponding brief. The father further insists the court misrepresented his stepson's testimony during the hearing, prevented him from representing himself in court, and erred in assessing him 50% of the guardian ad litem (GAL) fees. Finding no error, we affirm.

## FACTS

¶2.     David and Mary Carter married, had children, and eventually divorced. A chancery

court later arranged a custody agreement awarding each parent joint legal and physical custody of their children. Per the agreement, David was allowed to visit his children every weekend.

¶3. Nearly three years later, Mary filed a motion to modify the then-existing custody arrangement. She claimed David threatened her and allowed their children to "roam" the streets at late hours when visiting him. David filed a series of motions in response, including two MRCP 12(b) motions to dismiss and his own contempt motion against Mary, alleging she kept him from visiting their children on several occasions. He also issued her a set of interrogatories questioning her extensively about subjects not addressed in his contempt motion, such as whether she lied on her tax return to receive a "much larger" refund. Once David filed a motion to compel her to answer the interrogatories, Mary responded to them by rejecting most of the questions.

¶4. The chancery court ultimately dismissed David's Rule 12(b) motions. Specifically, the court ruled Mary stated a claim upon which relief could be granted because she documented David's questionable parenting skills and expressed concerns for their children's safety.[1]

---

[1] This is not the first time David's parenting skills were called into question during a domestic dispute. Last year, we ruled on a case in which David was appealing a final domestic protection order. *Carter v. Carter*, 304 So. 3d 1160, 1161 (¶¶1-2) (Miss. Ct. App. 2020). In that case, Mary had alleged David was verbally abusing their children and threatening to physically harm her then-boyfriend. *Id*. at (¶3). A hearing on the matter revealed not only that David's own therapist believed he was "not well" but also unearthed a drug test that exposed David's drug abuse. *Id*. Right after his hearing, he tested positive for a wealth of illegal substances, including cocaine and other amphetamines. *Id*. at (¶4). Mary, who was subjected to the same drug test, tested negative for drugs. *Id*. David did not contest the substance of his case on appeal. *Id*. at 1163 (¶17).

*See* MRCP 12(b)(6).

¶5.    A GAL was appointed to investigate the matter, and a virtual hearing was held. David and Mary's eldest son, Alonzo, was prepared to testify on his stepfather's behalf. During the hearing, David pressed the issue of Mary's allegedly untruthful answers to the interrogatories. The chancery court made clear that it would allow only the relevant interrogatories to be addressed during the hearing while disregarding those irrelevant to the matter before the court.

¶6.    The court then addressed and considered each motion David made prior to the hearing and made rulings on the record. For example, the court allowed the father to argue in favor of the motion to dismiss he filed, to which David simply insisted that with regard to Mary's contempt motion against him, "there [was] no court order, [so] there can't be a contempt of order judgment." Further, he argued that with regard to the allegations Mary listed "it [was] basically baseless charges with no evidence to back it up. There's nothing, and it's not true." After hearing his argument, the court denied David's motion to dismiss.

¶7.    Mary was afforded an opportunity to testify about the allegations she included in her contempt motion. She reiterated her position that David had allowed their children to stay out at late hours with boys and allowed them to have sleepovers at their friends' houses without informing her about their whereabouts. She also testified David allegedly threatened to go to their son's school and "shoot up" the place.

¶8.    After her report was introduced into evidence, the GAL recommended the father continue weekly visitation on the condition that he attend counseling with the children. She

essentially suggested David's visitation be supervised until counseling was completed.

¶9.     Sometime during the hearing, Mary's attorney suggested David and Mary split the GAL bill. David argued that the court should require Mary to pay the bill in full because she initiated the proceedings with her contempt motion. The court replied, "Okay. That's your response, although you are the one that requested [the hearing]?" David replied, "Yes, sir." In response, the court ordered the GAL fee to be split equally between David and Mary.

¶10.    Later, the following transaction took place between the court and David regarding his persistent concern about Mary's answers to the interrogatories:

> BY THE COURT: All right. Now, Mr. Carter, you filed a motion for contempt.
>
> BY MR. CARTER: Yes, your Honor.
>
> BY THE COURT: Is that the motion you need your witness on?
>
> BY MR. CARTER: Well, actually, I need the motion -- him to refute everything his mother said and especially the interrogatories. I have 11 out of 16 which she falsely answered or didn't answer properly.
>
> BY THE COURT: That's not before us. You made a statement earlier that you—that the answers had been received.
>
> BY MR. CARTER: That's right.
>
> BY THE COURT: There's no way you can benefit from any answer to an interrogatory that the Court could have ordered later because this hearing has to end. I'm going to make a ruling on this petition.

¶11.    The court also afforded David an opportunity to question his stepson and only witness, Alonzo. David asked his son about whether his younger brother ever lied about him in the past, whether the allegations about David's threatening to "shoot up" the younger son's

4

school "sounded true" to him, and whether he voluntarily left his mother's home. The son claimed his younger brother had lied about him in the past and that his mother made him leave home because he informed her husband that she was having relations with other men. The court deemed the latter response irrelevant.

¶12. David was allowed to testify about Mary allegedly not allowing him to see the children. On cross-examination, he said he never informed Mary about where the children were when they visited their friends' houses because she never did that for him.

¶13. Later in the hearing, David's concerns about his motion to dismiss and accompanying brief resurfaced. The record reflects he wanted the court to consider the divorce decree he attached to the motion. The court made clear that the matter before it did not concern the divorce proceeding but rather the custody modification. As a result, the court declined to address David's concern.

¶14. After addressing a few additional matters, the court announced it would issue a written ruling on the merits. In its later written decision, the court conducted an *Albright* analysis, found in Mary's favor, and reduced David's visitation to two weekends per month based on the facts and circumstances. Aggrieved, David appeals.

## STANDARD OF REVIEW

¶15. In child custody cases, "[r]eversal only occurs if a chancellor is manifestly wrong, or applied an erroneous legal standard." *Gateley v. Gateley*, 158 So. 3d 296, 300 (¶19) (Miss. 2015).

## ANALYSIS

¶16. We first point out that David failed to support any of the issues he brought before this Court with adequate reasons and authorities. Each of the arguments in his very short brief present a blanket assertion that the chancery court failed to include something he deemed important or that he suffered some form of bias. "A trial court's judgment is presumptively correct and *the appellant* must demonstrate reversible error to this Court" to overcome that presumption. *Lenard v. State*, 812 So. 2d 1097, 1102 (¶18) (Miss. Ct. App. 2001) (emphasis added) (citing *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)). "Part of the appellant's burden is to support the argument of the issues with reasons and authorities." *Id*. (citing *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss. 1982)).

¶17. In *Lenard*, the appellant presented this Court with several issues that "provid[ed] no case law to support the propositions presented." *Id*. We further noted that "[s]everal of his arguments [were] mere one or two line statements of opinion with no reference to the record, no development of the argument and, as stated above, no case law in support of these assertions." *Id*. As a result, we declined to address those issues further. *Id*.

¶18. We find in accordance with *Lenard* that David's appellant brief is deficient because he merely submitted complaints of the chancery court's alleged errors without providing any supporting caselaw. MRAP 28(a)(7). The fact that he failed to provide case cites places his appeal beyond our need to consider it. *See id.* Procedural bar notwithstanding, each of David's arguments are without merit.

¶19. David claims the chancery court erred in "disallowing" consideration of Mary's answers to most of his interrogatories during the hearing. But the chancery court made clear

on the record that most of the interrogatories were irrelevant to the matter before it.

¶20.    Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." MRE 401. "If the evidence has any probative value at all, the rule favors its admission." *Hughes v. State*, 735 So. 2d 238, 274 (¶163) (Miss. 1999) (quoting MRE cmt.). In David's case, it is clear that many of the questions he asked in the interrogatories lacked probative value.

¶21.    One question, for example, asked whether Mary had informed one of their children that David was not her biological father. Another asked whether she committed tax fraud by illegally including him on her tax return. A third asked whether Mary received a piece of jewelry from him one year earlier. David appears to take issue with the fact that not every interrogatory was addressed during the hearing, but the questions above and those like it were completely irrelevant to the matters that were at issue—whether David put his children in danger and whether Mary kept him from seeing his children. On the other hand, the substance of the interrogatories that questioned whether Mary kept him from seeing their children was addressed during the hearing. Because many of the interrogatories were irrelevant to the matter before the chancery court, the court did not err in excluding them from evidence.

¶22.    David also claims the chancery court excluded his motion to dismiss and accompanying brief. Specifically, he claims the clerk failed to file them on the docket. Yet the chancery court took care to address each of David's motions during the hearing, including

his motion to dismiss for failure to state a claim. The court also allowed David to argue in favor of this motion. Additionally, the court explained that it would not address the divorce decree David attached to his motion to dismiss and accompanying brief because the divorce was not an issue before the court. This issue is without merit.

¶23. David complains the chancery court erred in finding that Alonzo voluntarily left his mother's home. It is true that Alonzo testified his mother forced him out of his home. However, this alleged "misstatement" does not amount to reversible error. The chancery court made the statement in its written findings while conducting an *Albright* analysis to determine in whose favor the "other siblings" factor of the test leaned.[2] Not only was the statement not pertinent to the court's overall findings on this factor, but the court also found this particular factor leaned in neither of the parents' favors. Furthermore, the chancery court found during the hearing that such testimony was irrelevant and struck it from the record. Therefore, no prejudice resulted from the court including that one sentence. This issue is without merit.

¶24. David claims the chancery court erred by stating he was not allowed to represent himself in court. This is an allegation he makes concerning a completely different chancery judge who was previously assigned to handle the matter. That judge recused herself, and the case was eventually reassigned to the judge in this case. David is not referring to the judge involved for purposes of this appeal. The chancery judge in this case clearly allowed David

---

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

to represent himself in this proceeding. This issue is without merit.[3]

¶25. Finally, David claims the chancery court erred in ordering him to split the GAL fees with Mary. Specifically, he argues the court failed to consider that the only income he accrued stemmed from Supplemental Security Income.

¶26. "This Court has held that chancellors possess large discretion in apportioning costs, including the costs of the GAL." *Shows v. Cross*, 238 So. 3d 1224, 1235 (¶47) (Miss. Ct. App. 2018) (internal quotation marks omitted). "Our rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party." *Id*.

¶27. Because he is the "non-prevailing party," the chancery court is empowered to assess David a portion of the GAL fees. *Id*. Second, David admitted that he was the party who requested the hearing. We see no manifest injustice in the chancery court's decision to order an equal split of the GAL fees between Mary and David.

¶28. Mary requests this Court to "assess all costs including attorney's fees of $3600.00" to David, essentially because she considers his appeal frivolous. If she desires, she may raise this concern in a separate motion pursuant to Mississippi Rules of Appellate Procedure 27(a). *See Latham v. Latham*, 261 So. 3d 1110, 1116 (¶24) (Miss. 2019) ("While the Court has suggested that the better practice for a party seeking attorneys' fees on appeal is to file a motion pursuant to Rule 27(a), we hold that, henceforth, such requests must comply with Rule 27(a).").

---

[3] David correctly asserts that citizens possess the right to self-representation. Miss. Const. art. 3, § 25 ("No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.").

9

## CONCLUSION

¶29.    David's appeal failed to comply with appellate Rule 28, which procedurally bars his appeal because he failed to provide this Court with caselaw and sufficient reasons to support his arguments. Notwithstanding this procedural bar, each of his arguments are without merit. For these reasons, we affirm the chancery court's ruling.

¶30.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**